OFFICE OF CONSUMERS' COUNSEL, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as Consumers' Counsel v. Pub. Util. Comm. (1979), 57 Ohio St. 2d 78.]

(No. 78-415—Decided March 21, 1979.)

*Mr. William A. Spratley,* consumers' counsel, and *Mr. Orla E. Collier,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Mr. Kevin F. Duffy,* for appellee.

*Messrs. Porter, Wright, Morris & Arthur, Mr. Samuel H. Porter, Mr. Curtis A. Loveland* and *Mr. William J. Kelly, Jr.,* for intervenor-appellee.

*Per Curiam.* As support for reversal of the commission's order in the first instance, appellant contends that compliance with the 30-day filing deadline is a condition precedent to C&SOE's continued use of the fuel cost adjustment clause[2] and, when R. C. 4909.191(F)[3] is read in *pari materia* with R. C. 4909.191(B), the commission is required to, *ipso facto,* suspend the fuel adjustment cost clause of a company which does not so comply. We conclude otherwise.

---

[2] R. C. 4909.191(B) provides:

"Each electric light company shall submit thirty days prior to the hearing on its fuel cost adjustment clause all facts, data, and other information pertinent to its fuel procurement practices and policies to the public utilities commission."

[3] R. C. 4909.191(F) provides:

"Unless otherwise ordered by the public utilities commission, an electric light company that has complied with division (B) of this section may continue to pass through acquisition and delivery costs subject to readjustment or refund."

Neither R. C. 4909.191(B) nor 4909.191(F) contains language requiring the commission to automatically suspend the fuel cost adjustment clause of a company which fails to comply with this 30-day filing requirement. Absent clear statutory language to that effect, such an extreme result should not be imposed. *Ohio Power Co.* v. *Pub. Util. Comm.* (1978), 54 Ohio St. 2d 342, 376 N. E. 2d 1337; see, also, *State, ex rel. Jones,* v. *Farrar* (1946), 146 Ohio St. 467, 66 N. E. 2d 531.

The purpose of the filing requirement of R. C. 4909.-191(B) is to provide advance opportunity for the parties to analyze information submitted by the utility pertinent to its fuel procurement practices and policies. The filing deadline is designed to facilitate an orderly and prompt hearing, *State, ex rel. Jones,* v. *Farrar, supra,* and is not jurisdictional in nature.[4] See *Pennsylvania Rd. Co.* v. *Pub. Util. Comm.* (1961), 172 Ohio St. 154, 174 N. E. 2d 102; *Dover* v. *Pub. Util. Comm.* (1933), 126 Ohio St. 438, 185 N. E. 833. Appellant was afforded an opportunity to review the submitted information prior to the hearings. Moreover, appellant opposed C&SOE's offer to continue the hearings so that additional time would have been available to analyze the submitted data. Thereafter, the commission in its order of December 21, 1977, stated that C&SOE's late filing neither delayed the proceedings nor prejudiced appellant's cause. This conclusion is not disputed by appellant.

Appellant contends further that C&SOE passed demand costs through its fuel cost adjustment clause, in violation of R. C. 4905.32, and that the commission's order, which refused to refund these demand costs to C&SOE customers, is unreasonable and unlawful.

At the outset, a distinction must be recognized between the statutory rate-making process involved in establishing fixed rate schedules, and the statutory procedure govern-

---

[4] We do not reach the issue of whether R. C. 4909.191(F) requires the commission to suspend the fuel adjustment clause of a company in the event the data required by R. C. 4909.191(B) is not filed at any time prior to the scheduled hearing.

ing variable rate schedules under the fuel cost adjustment procedure. In the normal instance, a utility desiring to establish a rate, or change an existing one, must file a written application with the commission pursuant to R. C. 4909.-18. The function of the commission is to determine the justness and reasonableness of the proposed rates before they become effective, and to fix lawful rates in accordance with the statutory rate plan. *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* (1976), 46 Ohio St. 2d 105, 346 N. E. 2d 778. Once computed, a schedule of the rates approved by the commission must be filed with the commission under R. C. 4905.30. The utility is admonished, by the provisions of R. C. 4905.32, that it may not charge rates which differ from those previously approved and filed with the commission.

In contrast, the fuel cost adjustment provisions of R. C. Chapters 4905 and 4909 represent a statutory plan which authorizes a utility to pass variable fuel costs directly to consumers. Rates are thereby varied without prior approval of the commission, and independently from the formal rate-making process incorporated in R. C. 4909.18 and 4909.19. See R. C. 4905.01(G); Rule 4901:1-11-02(H), Ohio Adm. Code; R. C. 4905.302; *Ford Motor Co.* v. *Pub. Util Comm.* ( 1977), 52 Ohio St. 2d 142, 370 N. E. 2d 468. R. C. 4905.301 sets forth a procedure by which, "[n]ot withstanding any other provision of law," the utilization of the fuel cost adjustment procedure is governed by the commission through an after-the-fact, periodic review of a company's rate adjustment practices, policies and charges. Therefore, appellant's proposition that R. C. 4905.32 limits the fuel cost adjustment procedure to prior approved rates is without merit.

We find further that the commission's refusal to refund the demand costs is a valid exercise of its broad authority to promulgate rules designed to foster utility fuel procurement incentives. R. C. 4905.69(C)[5]; see, also, R.

---

[5] R. C. 4905.69(C) authorizes the commission to promulgate a rule that:

C. 4905.301(C). Initially, the commission promulgated Rule 4901:1-11-02(I), Ohio Adm. Code,[a] which, in pertinent part, provides that: "* * * No amounts billed as capacity or demand charges may be included as cost of fuel" in a fuel cost adjustment clause. In accordance with commission requirements stated in Rule 4901:1-11-09(B)(1), Ohio Adm. Code, a copy of Rule 4901:1-11-02 was incorporated into the tariff provisions of C&SOE on file with the commission. It is this tariff provision that appellant contends precluded the recovery of demand costs through the fuel cost adjustment clause.

Appellant's argument in this regard is not well taken. In *Consumers' Counsel* v. *Pub. Util. Comm.* (1978), 56 Ohio St. 2d 319, 384 N. E. 2d 245, this court upheld an order of the commission which authorized the inclusion of the entire cost of energy purchased on an economic dispatch basis in the fuel cost adjustment clause. Furthermore, the commission has previously determined, in case No. 76-166-EL-FAC, dated August 11, 1976, that Rule 4901:1-11-02(I), formerly Section 26.02(I) of the commission's Code of Rules and Regulations, as applied to the demand costs associated with purchased energy, was not feasible because "it would discourage economic transactions which would

---

"Establishes incentives, in terms of costs that may be recovered by electric light companies pursuant to a fuel cost adjustment clause for the implementation and employment by such companies of efficient fuel procurement and utilization practices."

[a]Rule 4901:1-11-02(I), Ohio Adm. Code, provides:

"'Fuel cost attributable to purchased power' means the actual identifiable fuel costs attributable to energy purchased, except for energy purchased on an economic dispatch basis for which the energy charge may be fully included to the extent that at the time the purchase decision is made the expected purchase energy cost per kilowatt-hour does not exceed the expected incremental fuel cost per kilowatt-hour for the purchaser's own generation which could substitute for the purchased power. The term 'economic dispatch' as applied herein shall include all purchases of economy energy, that is, purchases for which the total energy charge is less than that for the purchaser's own generation, as a substitute for the purchaser's own higher cost energy. No amounts billed as capacity or demand charges may be included as cost of fuel. * * *"

lower the overall cost of electricity and thus benefit both the utility and the consumer." The commission stated further that it has been "clearly demonstrated that the effect of excluding all demand charges * * * would be to discourage, if not eliminate certain economic purchases of power, to the detriment of the consumer." Accordingly, the commission held the application of Rule 4901:1-11-02(I) unreasonable in those circumstances and authorized the inclusion of demand costs in the fuel cost adjustment clause. Thus the commission order in the instant cause, which results in a reduction of energy costs, for the consumer and the utility is both reasonable and lawful. R. C. 4909.13.

In its final proposition of law, appellant urges that the commission's determination not to order a refund of $125,-000 in fuel costs passed through the company's fuel cost adjustment clause (which was subsequently refunded to C&SOE by the selling utility) was unreasonable and unlawful. The commission, however, refused the refund because the evidence adduced at the audit hearing demonstrated that C&SOE erroneously neglected to charge $119,000 for net energy costs, which it could have passed through its fuel cost adjustment clause. The commission determined that the overcharge and the undercharge "results in a $6,000 difference, which is so minimal that the cost of administering the adjustment could exceed the refund."

A finding and order of the commission will not be disturbed by this court unless it appears from the record that the commission's determination is manifestly against the weight of the evidence and so clearly unsupported as to show misapprehension or mistake or willful disregard of duty. *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403, 330 N. E. 2d 1 (paragraph eight of the syllabus); certiorari denied, 423 U. S. 986; *Reynoldsburg Trucking, Inc.* v. *Pub. Util. Comm.* (1978), 53 Ohio St. 2d 201, 373 N. E. 2d 1250. Under R. C. 4905.66(F), the

---

'R. C. 4905.66(F) provides:

"(1) Where the public utilities commission determines, under divi-

commission is empowered to readjust utility rates when it determines that an error or inaccuracy has occurred and it is equitable to do so. In our opinion, the commission's finding and order in this regard is neither unreasonable nor unlawful.

The order of the commission is affirmed.

*Order affirmed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY and WHITESIDE, JJ., concur.

HOLMES, J., not participating.

WHITESIDE, J., of the Tenth Appellate District, sitting for LOCHER, J.

---

sion (E) of this section, that an error or inaccuracy exists, the commission shall immediately order the company to readjust equitably the rates charged all its customers accordingly or order a refund. The commission shall set a reasonable period for the company to comply with its order.

"(2) Where the public utilities commission determines, as a result of the examination conducted under division (E) of this section, that an inaccuracy exists, the effect of which is that customers of an electric light company have been undercharged, the commission shall order the company to equitably adjust the rates charged to all its customers."