OFFICE OF CONSUMERS' COUNSEL, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Consumers' Counsel *v.* Pub. Util. Comm. (1985), 16 Ohio St. 3d 21.]

(No. 84-818—Decided March 27, 1985.)

*Mr. William A. Spratley,* consumers' counsel, *Mr. Bruce J. Weston* and *Mr. Paul A. Centolella,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Mr. Robert S. Tongren, Mr. Joseph P. Cowin* and *Ms. Mary R. Brandt,* for appellee.

*Mr. Donald W. Morrison* and *Mr. Kevin M. Sullivan,* for intervening appellee Ohio Bell Telephone Co.

*Per Curiam.* The issue before us is precisely the same as in *Consumers' Counsel* v. *Pub. Util. Comm.* (1984), 10 Ohio St. 3d 49 (hereinafter *"Consumers' Counsel"*) and *Cincinnati Bell Tel. Co.* v. *Pub. Util. Comm.* (1984), 12 Ohio St. 3d 280, 287-288 (hereinafter *"Cincinnati Bell"*). For the following reasons, we reaffirm our prior position and reverse the order of the Public Utilities Commission.

In order for this court to determine if there has been an abuse of discretion we must first understand why the commission's prior order, on the same subject matter, in *In re Extension of F.C.C. First Report and Order* (July 31, 1981), case No. 81-828-TP-ORD ("1981 order"), is no longer controlling. A few simple sentences in the commission's order in

this case would have sufficed in this regard. An even simpler response could have been a reopening and modification of the 1981 order to create a case by case approach for expensing Class A telephone carrier station connections. This was never done.

The commission states in its order in the present case:

"The issue really is how should these test year expenses be treated given the previously authorized phase-in treatment prescribed by this Commission. We believe that it is only logical to adopt the 100 percent expensing treatment given the fact that we are setting rates prospectively and that the company will be actually expensing such costs on its books during the time these rates will be in effect." Although the "previously authorized phase-in treatment prescribed by this Commission" is mentioned, the commission does not specifically address or overrule its 1981 order. No explanation is given for changing the expensing levels during the test year to conform with the utility's in-house accounting methodology.

More importantly, no explanation is given why the purpose underlying the 1981 order's gradual four year phase-in approach is now better served by flash-cut expensing. As Roger Montgomery, a staff witness, pointed out in his testimony, "[t]he intent of the phase-in periods was to *reduce the impact of the added revenue requirement to the ratepayers* that would occur if a Class A telephone carrier were to 'flash cut' this station connection expensing accounting change, the FCC ordered the phase-in methodology. However, this accounting change will not affect customer rates *until there is a rate case which recognize [sic] it*." (Emphasis added.) Now, the commission has imposed the full brunt of the flash-cut expense on consumers without justifying its rationale for the burden.[1]

We concluded, in *Consumers' Counsel, supra,* that the commission has

---

[1] The difficulties engendered by varied expensing methods were presaged by then Acting Chairman Robert E. Lee in *In re Amendment of Part 31, First Report and Opinion* (1981), 85 F.C.C.2d 818, 848:

"I am dissenting to the action the Commission is taking today on the basis that the piecemeal approach we are taking may, in the long run, create more burdens on the regulated entities and our fellow State Commissioners than a consolidated approach. * * *

"I am very concerned that in this effort the Commission is instituting an 'accounting change' which will not affect all telephone companies. Moreover, because the decision permits either a flash cut or a phase-in, at least three different accounting treatments for station connections may occur in a single jurisdiction. This confusion, I do not believe, necessarily comports with the public interest."

We recognize, as did Acting Chairman Lee, that an inconsistent, piecemeal approach to accounting treatments serves no useful end. We are compelled to recognize that accounting changes have a substantial practical impact on ratemaking. Although the station connections expenses resulted from events occurring within the test-year period, characterization of those expenses after the test-year period has the practical effect of manipulating a test-year component after the test year and effectively creates a test-year loophole. This demonstrates how inextricably accounting methodologies are linked to the rates consumers may be compelled to pay.

the discretion to modify the accounting treatment of station connections expenses. We will not allow the commission to arbitrarily change expensing levels unless the commission explains why its 1981 order and the rationale behind gradual phase-in should be overruled. Articulating the reasons for an order without reference to the prior order gives no context to the subsequent order and makes ascertaining an abuse of discretion virtually impossible. Consumers who rely on commission directives are unable to understand why the basis for the 1981 order, the ostensible protection of consumers for four years with a gradual phase-in of station connections expenses, must now give way to utility convenience rather than need.

A separate issue is raised by Ohio Bell which argues that this court may not interfere with commission actions that recognize and give effect to averred federally preempted station connections expensing levels. Unfortunately for Ohio Bell, this court has never accepted the preemption argument on the station connections issue (see *Cincinnati Bell, supra,* concurring opinion by Celebrezze, C.J.). Additionally, the federal courts are not in agreement on this issue. In the most recent decision, *New England Tel. & Tel. Co.* v. *Pub. Util. Comm. of Maine* (C.A. 1, 1984), 742 F.2d 1, the First Circuit Court of Appeals held Section 401(b) (of Title 47, U.S. Code) of the Federal Communications Act of 1934 (Section 151 *et seq.,* Title 47, U.S. Code) does not include rulemaking decisions (specifically, *In re Amendment of Part 31, First Report and Order* [1981], 85 F.C.C.2d 818) in its definition of "order." *Southwestern Bell Tel.* Co. v. *Arkansas Pub. Serv. Comm.* (C.A. 8, 1984), 738 F.2d 901.

If, *arguendo,* preemption were applicable, Ohio Bell's argument would still be moot since this court's position has only embraced the FCC's original four year phase-in position. It was the FCC, not this court or the state legislature, which delegated application of station connections expensing levels to the state utility commissions. Both methods in issue — the flash-cut and the four year phase-in — conform with the FCC's First Report and Order. It should parenthetically be noted that the commission has taken care to specifically disavow itself from intervening-appellee's preemption argument.

At some point the United States Supreme Court will address the problems of FCC preemption in view of the difficulties arising from the breakup of AT&T. In the meantime, pending specific resolution of the preemption question, we will not abdicate our state constitutional and statutory responsibilities.

Accordingly, because the commission has not justified its overruling of its 1981 order, although given ample warning to do so by our prior decision, we reverse the order of the commission.

*Order reversed.*

CELEBREZZE, C.J., SWEENEY, LOCHER and DOUGLAS, JJ., concur.

HOLMES, C. BROWN and WRIGHT, JJ., dissent.

HOLMES, J., dissenting. I agree with the dissent below based upon my dissent in *Consumers' Counsel* v. *Pub. Util. Comm.* (1984), 10 Ohio St. 3d 49, 51.

WRIGHT, J., dissenting. I must respectfully dissent in this case. As noted by the majority and in *Consumers' Counsel* v. *Pub. Util. Comm.* (1984), 10 Ohio St. 3d 49, the commission has the power and right to change its position. In *Consumers' Counsel,* this court reversed an order of the commission that would have permitted an accelerated expensing of station connections costs for the express reason the commission did not state its rationale for its change in position. In this case, the commission's order articulates the commission's rationale for deviation from former procedures, and therefore the commission's order should not be reversed.

The majority opinion states that the commission did not explain its rationale for abandoning the gradual phase-in of station connections costs. To the contrary, the commission's order succinctly states that the commission is allowing the one hundred percent expensing treatment because rates are set prospectively and Ohio Bell expenses one hundred percent of the costs on its books. Further, the record discloses that the commission's reasoning was supported by the evidence presented at the hearing. In light of these facts, I simply cannot accept the posture that the commission's order was against the manifest weight of the evidence or clearly unsupported by the record.

It is undisputed that the costs were incurred during the test period and that the commission could have adopted the one hundred percent expensing method initially. As stated by Justice Holmes in his dissent in *Consumers' Counsel, supra,* "[t]he mere fact that the commission initially selected the 'phase-in' method is of no significance under the facts presented." *Id.* at 51.

I would affirm the commission's order as it is neither unlawful nor unreasonable and is supported by more than sufficient rationale. I believe we should not depart from the long-standing posture that we will not substitute our judgment for that of the commission absent a showing that the commission's order is manifestly against the weight of the evidence or is so clearly unsupported by the record as to show misapprehension, mistake, or a willful disregard of duty. *Delphos* v. *Pub. Util. Comm.* (1940), 137 Ohio St. 422, 424 [19 O.O. 126]; *Cleveland* v. *Pub. Util. Comm.* (1965), 3 Ohio St. 2d 82, 84 [32 O.O.2d 59]; *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403 [71 O.O.2d 393], paragraph eight of the syllabus, certiorari denied (1975), 423 U.S. 986; *Columbus* v. *Pub. Util. Comm.* (1984), 10 Ohio St. 3d 23, 24-25; *Consumers' Counsel* v. *Pub. Util. Comm.* (1984), 10 Ohio St. 3d 49, 50.

C. BROWN, J., concurs in the foregoing dissenting opinion.