OFFICE OF CONSUMERS' COUNSEL, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *Consumers' Counsel v. Pub. Util. Comm.* (1992), 63 Ohio St.3d 531.]

(Nos. 91–1609 and 91–2339—Submitted January 22, 1992—Decided May 6, 1992.)

532

*William A. Spratley,* Consumers' Counsel, *Barry Cohen* and *David Bergmann,* for appellant, Office of Consumers' Counsel.

*Lee I. Fisher,* Attorney General, *James B. Gainer, William L. Wright* and *Craig S. Myers,* for appellee, Public Utilities Commission of Ohio.

*Craig I. Smith,* for intervening appellees, Cleveland Electric Illuminating Company and Toledo Edison Company.

---

*Per Curiam.* The issue before us is what portion, if any, of the fees in question may be included in the companies' EFC rates. R.C. 4909.191 governs EFC proceedings and provides in part:

"(C) The electric light company shall demonstrate at the hearing on its fuel component that its acquisition and delivery costs were fair, just, and reasonable. * * *"

R.C. 4905.01(G) defines "fuel component" as:

" * * * acquisition and delivery costs of fuel for the generation of electricity, including the allowable costs of purchased power as defined in section 4909.159 of the Revised Code * * *."

R.C. 4905.01(E) defines "delivery cost" as:

" * * * the cost of delivery of fuel, to be used for the generation of electricity, from the site of production directly to the site of an electric generating facility."

R.C. 4905.01(F) defines "acquisition cost" as:

" * * * the cost to an electric light company of acquiring fuel for generation of electricity. * * *"

Relying on the language of R.C. 4905.01(F), OCC first argues that the fees at issue are not recoverable through the EFC rate because they did not enable the *companies* to *acquire* additional fuel. It contends that the CFC transactions merely constituted a refinancing of the fuel already in use by the companies and that, while CFC (which is not an electric light company) acquired an interest in the fuel, the utilities did not, requiring the costs at issue to be disallowed. In *Consumers' Counsel v. Pub. Util. Comm.* (1978), 56 Ohio St.2d 319, 10 O.O.3d 443, 384 N.E.2d 245, we declined to construe R.C. 4905.01(F) so narrowly, and upheld the commission's inclusion of purchased power costs in the EFC rate, even though the utility did not technically

acquire fuel in the transaction.[4]  In the case before us, while it is true that the companies did not acquire additional fuel from the transactions in a physical sense, the transactions did permit them to obtain a new leasehold interest in the fuel.  This new interest permitted the companies to acquire the fuel on different terms, most significantly, at a substantially reduced cost.  Accordingly, we reject OCC's argument and find that the companies acquired fuel as a result of the CFC transactions.  This finding, however, does not resolve the determinative issue in this proceeding, which is whether the banking and legal fees are includable in the EFC rate as "direct and justifiable" acquisition costs under Ohio Adm.Code 4901:1–11–04(C)(2)(a).[5]

The commission included the banking fees at issue in the EFC rate, finding that they represented financing costs which were "directly and justifiably *related to* the acquisition and delivery of nuclear fuel in accordance with Rule 4901:1–11–04(C)(2)(a), O.A.C."  (Emphasis added.)  OCC argues that, because R.C. 4905.01(F) does not explicitly provide for the allowance of costs which are "related to" acquisition costs, the commission exceeded its statutory authority in including the banking fees in the EFC rate.  We reject OCC's argument as being overly semantic.  It is clear that the commission merely paraphrased the language of its rule in making its determination that the fees were direct and justifiable acquisition costs.

"Under the 'unlawful or unreasonable' standard specified in R.C. 4903.13, this court will not reverse or modify a PUCO decision as to questions of fact where the record contains sufficient probative evidence to show that the PUCO's determination is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty."  *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1988), 38 Ohio St.3d 266, 268, 527 N.E.2d 777, 780.  The record in this proceeding shows that the banking fees were a part of the

---

4.  R.C. 4905.01(G) was subsequently amended to explicitly permit the recovery of "purchased power" through the EFC rate.

5.  Ohio Adm.Code 4901:1–11–04(C)(2)(a), provides:
"The 'includable nuclear fuel costs' are the *direct and justifiable* acquisition and delivery costs of nuclear fuel attributable to the amount of nuclear fuel consumed during the base period in producing the electric utility's system net generation from nuclear plants.  The includable nuclear fuel costs shall be limited to those amortized costs entered into account number 518 of the federal energy regulatory commission's uniform system of accounts that are cleared from account numbers 120.3, 120.5 and 186.  The *financing costs* for nuclear fuel leases, or any other costs associated with nuclear generation, which are included in base rates apart from the EFC rate are not includable nuclear fuel costs.  The includable nuclear fuel costs shall include the nuclear fuel costs attributable to pumped storage operations."  (Emphasis added.)

financing costs necessary for the companies to acquire nuclear fuel from CFC. Thus, under the above standard of review, we find the commission's allowance of the banking fees to be neither unreasonable nor unlawful.

OCC also argues that the legal fees included in the EFC rate are not direct and justifiable acquisition costs, and that their allowance constituted an improper departure from commission precedent. *Consumers' Counsel v. Pub. Util. Comm.* (1984), 10 Ohio St.3d 49, 50–51, 10 OBR 312, 313, 461 N.E.2d 303, 304; *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.* (1975), 42 Ohio St.2d 403, 431, 71 O.O.2d 393, 409, 330 N.E.2d 1, 19–20.

In *Toledo Edison Co.* (Jan. 31, 1984), PUCO No. 83–35–EL–EFC, unreported, the commission found that similar legal fees were not includable in the EFC rate, stating: " * * * the Commission believes that the critical element in determining whether these costs should be recovered through the EFC is whether they are *directly* and *justifiably* related to the acquisition of the nuclear fuel. This is where we believe the case for inclusion of these particular costs must fail. There is no doubt that these legal and consulting fees are *tangentially related* to acquiring the nuclear fuel but we do not believe that these particular costs are inextricably related to the acquisition of the fuel." (Emphasis *sic.*) *Id.* at 6–7.

In its initial opinions and orders issued in the companies' respective EFC proceedings, the commission disallowed the legal fees at issue, quoting the above language. On rehearing, however, the commission reversed its determination, clearly departing from the precedent it established in *Toledo Edison, supra.* *Consumers' Counsel, supra,* and *Cleveland Elec. Illum. Co., supra,* do not prohibit such a departure, *per se,* but rather require the commission to justify sufficiently why its precedent is not controlling in a given proceeding. See, also, *Consumers' Counsel v. Pub. Util. Comm.* (1984), 10 Ohio St.3d 49, 10 OBR 312, 461 N.E.2d 303; *Consumers' Counsel v. Pub. Util. Comm.* (1985), 16 Ohio St.3d 21, 16 OBR 371, 475 N.E.2d 786. The commission justified the allowance of the legal fees in this case because they were incurred to decrease the fuel costs of the companies and their customers.

R.C. 4905.69 provides in part:

"The public utilities commission shall promulgate a rule that:

" * * *

"(C) Establishes incentives, in terms of costs that may be recovered by electric light companies pursuant to a fuel component for the implementation and employment by such companies of efficient fuel procurement and utilization practices[.]"

Further, R.C. 4905.301, which grants the commission authority to review EFC rates, provides in part:

"Nothing in this section shall preclude the use of a fuel component that creates positive efficiency incentives for minimizing the costs of electric service."

In *Consumers' Counsel v. Pub. Util. Comm.* (1978), 56 Ohio St.2d 319, 10 O.O.3d 443, 384 N.E.2d 245, the commission permitted the recovery of the entire cost of purchased power through the EFC rate. OCC appealed, arguing that such costs were not recoverable because they did not fall within the statutory definition of acquisition or delivery costs. We rejected OCC's argument and affirmed the commission, recognizing its authority under R.C. 4905.69 to promulgate rules which benefited utilities and their consumers by decreasing fuel costs.

In *Consumers' Counsel v. Pub. Util. Comm.* (1979), 57 Ohio St.2d 78, 11 O.O.3d 245, 386 N.E.2d 1343, the commission included demand charges attributable to purchased power in the EFC rate, despite its rule which explicitly provided for their disallowance. The commission reasoned that application of the rule would be unreasonable because it would discourage certain economic purchases of power to the detriment of consumers. We affirmed, finding that the transaction resulted in a reduction of energy costs to the utility and its consumers, and that the commission's determination constituted a "valid exercise of its broad authority to promulgate rules designed to foster utility fuel procurement practices. R.C. 4905.69(C); see, also, R.C. 4905.301(C)." (Footnote omitted.) *Id.* at 83–84, 11 O.O.3d at 248–249, 386 N.E.2d at 1346–1347.

The commission's allowance of the legal fees in this proceeding falls squarely within its broad authority to set EFC rates so as to encourage efficient fuel procurement practices and thereby minimize the cost of electric service to consumers. Accordingly, we find that the commission sufficiently justified its departure from precedent on this issue and that its determination was neither unreasonable nor unlawful.

Next, OCC claims that, because the banking and legal fees at issue were cleared from Account 120.6, they are not recoverable through the EFC rate. OCC bases its argument on the portion of Ohio Adm.Code 4901:1–11–04(C)(2)(a) which provides that " * * * [t]he includable nuclear fuel costs shall be limited to those amortized costs entered into account number 518 of the federal energy regulatory commission's uniform system of accounts that are cleared from account numbers 120.3, 120.5 and 186." The commission rejected OCC's argument below, again citing the savings which the companies' customers received from the CFC transactions. We find R.C. 4905.301 and

the above case law to be equally applicable to this proposition of law and affirm the commission's determination on this issue in accordance with our discussion above.

Finally, OCC argues that the commission's allocation of only $29,865 in legal fees to the cost of incorporating CFC is not supported by the manifest weight of the evidence. It is settled that this court will not reverse an order of the commission absent a demonstration of prejudice by the party seeking reversal. *Cincinnati v. Pub. Util. Comm.* (1949), 151 Ohio St. 353, 39 O.O. 188, 86 N.E.2d 10; *Ohio Edison Co. v. Pub. Util. Comm.* (1962), 173 Ohio St. 478, 20 O.O.2d 108, 184 N.E.2d 70; *Akron v. Pub. Util. Comm.* (1978), 55 Ohio St.2d 155, 9 O.O.3d 122, 378 N.E.2d 480; *Holladay v. Pub. Util. Comm.* (1980), 61 Ohio St.2d 335, 15 O.O.3d 426, 402 N.E.2d 1175; *Allen v. Pub. Util. Comm.* (1988), 40 Ohio St.3d 184, 532 N.E.2d 1307. In this proceeding, the commission accepted the only available evidence as to the costs to incorporate CFC, instructed the independent auditors assigned to the companies to examine the appropriateness of this amount, and thus preserved this issue for future reconciliation in the companies' autumn EFC proceedings. Under these circumstances, we find that OCC has failed to demonstrate prejudice from the commission's determination. Accordingly, this proposition of law is overruled.

*Orders affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.