TRANSPORT SUPPLY, INC., APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

(No. 79-379—Decided December 19, 1979.)

*Messrs. Burke, Haber & Berick, Mr. Joseph S. Berick, Mr. Robert S. Stone* and *Mr. Louis S. Witherspoon,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Ms. Jane L. Miller,* for appellee.

*Messrs. Stiverson & Alden* and *Mr. James R. Stiverson,* for intervening appellee Propane Transport, Inc.

*Mr. Taylor C. Burneson,* for intervening appellee Coastal Tank Lines, Inc.

JACKSON, J. Appellant contends that the findings of fact of the commission are not supported by the record and that its opinion fails to state the reasons upon which the commission's conclusions are based, as required by R. C. 4903.09.

The provisions of R. C. 4921.10 require every motor transportation company to obtain from the commission a certificate before commencing a proposed operation declaring that the "public convenience and necessity require such operation." The burden of proof is on the applicant to demonstrate, *inter alia,* the public convenience and necessity for the proposed service and the inadequacy of existing transportation facilities or service. *Alspaugh* v. *Pub. Util. Comm.* (1946), 146 Ohio St. 267, 268. The issuance of a certificate is prohibited if it appears from the evidence that the existing service is "reasonably adequate." R. C. 4921.10. See *McLain* v. *Pub. Util. Comm.* (1924), 110 Ohio St. 1 (interpreting the predecessor to R. C. 4921.10).

The record in the case at bar is voluminous. The facts, however, may be distilled into the following summary. During the winter of 1976-77, one of the most severe in recent memory, the curtailment in the distribution of natural gas caused a significant but temporary increase in demand for propane gas by companies who use it as an emergency standby fuel. Due to the extreme weather conditions and the shortage of available propane at pipeline terminals, long lines and loading delays occurred at the Lake Underground Storage Corporation facility.* This resulted in delays in the delivery of propane.

---

* The lack of *available* propane in pipeline terminals for some customers was due to allocation requirements of the federal government which pro-rate propane availability based upon the customer's past history of usage. As a result, those con-

There was testimony by propane consumers that, under the circumstances, they did not view the delivery delays as the fault of the common carriers. There was, however, conflicting testimony by propane consumers over whether additional service from the Lake Underground storage facility would have been helpful in alleviating the emergency condition.

The commission is required, in each contested case, to file findings of fact and a written opinion stating the reasons upon which its decision is based. R. C. 4903.09. The commission's opinion in the case at bar contained a summary of the testimony of each witness, findings of fact and conclusions of law. After a thorough review of the record, we are persuaded that the opinion and order of the commission are consistent with the evidence and therefore lawful.

The pertinent conclusions of law of the commission are as follows:

"(7) Even in light of the pressing need for propane demonstrated in this case, largely attributable to several factors including the most severe winter in history to that point, the subsisting and protesting carriers could not be chargeable with the rendition of unreasonably inadequate service in the context of *Canton-East Liverpool Coach Company* v. *Pub. Util. Comm.*, 123 Ohio St. 127 (1931); *A & T Motor Freight* v. *PUCO*, 125 Ohio St. 617 (1932); and *Schilli Motor Lines, Inc.*, Order dated December 21, 1977.

"(8) Under the circumstances, the addition of one more carrier to the rather chaotic scene could very well have compounded the difficulty rather than ameliorated it.

"(9) There is no testimony of record upon which a *present or future* need for additional transportation service may reasonably be based.

"(10) Applicant has failed to prove public convenience and necessity for the service which it proposes to render.

"(11) Applicant has failed to prove that the subsisting and protesting carriers are not and have not been performing reasonably adequate service."

First the record supports the conclusion of the Public

sumers who could not obtain propane at pipeline terminals converged on the Lake Underground Storage Corporation facility causing the long loading delays.

Utilities Commission that the main causes for the delivery problems experienced by propane users during the winter of 1976-77 were the extreme weather conditions and long loading delays, and not the lack of transportation services. The record discloses that the poor road conditions and loading delays caused by the particularly severe winter were highly unusual and exceptional. The evidence further suggests that additional carriers would not necessarily have ameliorated the delivery delays, and could conceivably have compounded the problem. In addition, the commission noticed that adjustments have been made for dealing with such exigencies in the future.

The commission found further that the existing certificate holders could not be said to have rendered inadequate service. This court has previously interpreted "reasonably adequate service" as follows:

" 'Reasonably adequate service' does not contemplate the highest character of service, either as to frequency or directness, but only contemplates a service which, when measured by the expense of the service, the volume of traffic and the needs of the public, is practicable. (*Canton-East Liverpool Coach Co.* v. *Public Utilities Commission,* 123 Ohio St., 127, approved and followed.)" *A & T Motor Freight, Inc.* v. *Pub. Util. Comm.* (1932), 125 Ohio St. 617, paragraph two of the syllabus.

We conclude the record in the case at bar contains sufficient evidence to support the commission's conclusion that the existing carriers provided "reasonably adequate service" during the winter of 1976-77. Moreover, even if the service rendered during that period had been inadequate, appellant failed to meet its burden of producing evidence demonstrating that the service had also been inadequate prior or subsequent to the winter of 1976-77. Any inadequacy of service rendered during that winter period by the certificated motor carriers is certainly mitigated by the exceptional circumstances and what appears from the evidence to have been an otherwise adequate record of service by these carriers.

The law is well established in Ohio with respect to reversal, vacation, or modification of an order of the Public Utilities Commission:

"***[A] finding and order of the commission should not be disturbed and will not be disturbed unless it appears from the record that such finding and order are manifestly against the weight of the evidence, and are so clearly unsupported by it as to show misapprehension or mistake, or wilful disregard of duty." *Delphos* v. *Pub. Util. Comm.* (1940), 137 Ohio St. 422, 424, approved and followed in *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 403, paragraph eight of the syllabus.

Moreover, where the evidence in a case is conflicting, and where there is "substantial evidence in the record to support a finding either in favor of or against the appellant," the order of the commission will not be found unreasonable or unlawful. *New York Central Rd. Co.* v. *Pub. Util. Comm.* (1953), 160 Ohio St. 220, 221.

Therefore, as the record discloses substantial evidence to support the determination that the public convenience and necessity was being adequately served by existing certificate holders, we find the opinion and order of the commission to be both reasonable and lawful.

Accordingly, the order of the commission is affirmed.

*Order affirmed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY and HOLMES, JJ., concur.

JACKSON, J., of the Eighth Appellate District, sitting for LOCHER, J.