184

ALLEN, D.B.A. J & M TRUCKING, ET AL., APPELLANTS, *v.* PUBLIC UTILITIES COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as Allen *v.* Pub. Util. Comm. (1988), 40 Ohio St. 3d 184.]

(No. 87-1560—Submitted October 25, 1988—Decided December 30, 1988.)

*Sanborn, Brandon & Duvall Co., L.P.A., James Duvall* and *Clifton G. Valentine, Jr.,* for appellants.

*Earl N. Merwin,* for intervening appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Robert S. Tongren* and *Elizabeth H. Watts,* for appellee.

*Goldman, Seiberling, Davis & Tsarnas* and *James E. Davis,* for intervening appellee.

MOYER, C.J. Appellants argue that by summarily dismissing their protests, the commission failed to take into consideration certain requirements of R.C. 4921.10 and, by implication, R.C. 4903.09. We disagree and affirm the order of the commission.

R.C. 4921.10 provides in part:

"Before granting any certificate the commission shall take into consideration other existing transportation facilities in the territory for which a certificate is sought. If it appears from the evidence that the service furnished by existing transportation facilities is reasonably adequate, the commission shall not grant such certificate."

The commission emphasizes that the *Continental* case was considered three months prior to the filing of Sandridge's application and that it may take administrative notice of the *Continental* record.

The central issue is whether it is reasonable and lawful for the commission to base its order herein on evidence of record obtained in the *Continental* proceeding. Disposition of this question turns largely on the propriety of taking administrative notice of the earlier record and the sufficiency of the *Continental* order.

This court has previously recognized neither an absolute right to nor prohibition against the commission's authority to take administrative notice. Each case has been resolved based on the particular facts presented.

In *Forest Hills Utility Co.* v. *Pub. Util. Comm.* (1974), 39 Ohio St. 2d 1, 68 O.O. 2d 1, 313 N.E. 2d 801, we held that it was error for the commission to take administrative notice of an analysis not available at the time of hearing which the appellant had no opportunity to examine. We concluded that evidence must be introduced at a hearing or otherwise brought to the knowledge of the interested parties prior to decision, with an opportunity to explain and rebut. *Id.* at 3, 68 O.O. 2d at 2, 313 N.E. 2d at 802.

But in *Schuster* v. *Pub. Util. Comm.* (1942), 139 Ohio St. 458, 22 O.O. 507, 40 N.E. 2d 930, we affirmed an order in which the commission stated that it would have been derelict in its duty to the public not to have taken judicial notice of its own records, and in *J.V. McNicholas Transfer Co.* v. *Pub. Util. Comm.* (1975), 44 Ohio St. 2d 23, 73 O.O. 2d 118, 336 N.E. 2d 429, we held that administrative notice of a zone enlargement petition proceeding was reasonable. In *Canton* v. *Pub. Util. Comm.* (1980), 63 Ohio St. 2d 76, 17 O.O. 3d 46, 407 N.E. 2d 9, we held that the commission's reference to a prior commission case was not improper, and in *County Commrs. Assn.* v. *Pub. Util. Comm.* (1980), 63 Ohio St. 2d 243,

17 O.O. 3d 150, 407 N.E. 2d 534, we concluded that it was not a denial of due process of law for the commission to take administrative notice of an investigative case in the appellants' complaint case.

More recently, in *Cincinnati Bell Tel. Co. v. Pub. Util. Comm.* (1984), 12 Ohio St. 3d 280, 12 OBR 356, 466 N.E. 2d 848, appeal dismissed (1986), 476 U.S. 1166, we declined to reverse an order of the commission where no prejudice was shown to result from taking administrative notice of a fact without providing the utility an opportunity to present evidence regarding this additional information.

For purposes of our review, the factors we deem significant include whether the complaining party had prior knowledge of, and had an adequate opportunity to explain and rebut, the facts administratively noticed. Moreover, prejudice must be shown before we will reverse an order of the commission.

Here, we find nothing improper in the commission's taking administrative notice of the *Continental* record. Appellants were parties to the *Continental* proceeding and, as such, arguably had knowledge of, and an adequate opportunity to explain and rebut, the evidence. Further, they were on notice, following *Continental*, that additional opportunities to challenge the earlier findings could be lost. The commission had cautioned J&M not to expect to use the authority granted in *Continental* to protest other carriers' attempts to obtain identical authority.

Clearly, it was incumbent on the appellants, if they had any concerns regarding the *Continental* record or order, to have raised these matters through an application for a rehearing of the earlier order.

J&M essentially maintains that it was unnecessary to apply for a rehearing of the *Continental* order, or that it is otherwise unlawful to rely on this decision, because the findings on which the commission based dismissal of its protests were not, in its opinion, true findings. For example, J&M characterizes as suggestive the commission's admonition against using the *Continental* authority to protest others' requesting similar authority. We find this language to be clear. By protesting the granting of a certificate in this case, appellants engaged in the exact conduct the *Continental* order warned against.

Appellants also argue that the language quoted at the outset of the decision is merely *obiter dictum* that appears only in the discussion portion of the order.

R.C. 4903.09 provides:

"In all contested cases heard by the public utilities commission, a complete record of all of the proceedings shall be made, including a transcript of all testimony and of all exhibits, and the commission shall file, with the records of such cases, findings of fact and written opinions setting forth the reasons prompting the decisions arrived at, based upon said findings of fact."

In *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1987), 32 Ohio St. 3d 306, 311-312, 513 N.E. 2d 337, 343, we recently addressed an argument similar to the one asserted by J&M. We recognized that "[t]aken literally, R.C. 4903.09 requires PUCO orders to contain specific findings of fact and conclusions of law" and that orders which merely make summary rulings and conclusions without developing the supporting rationale or record are subject to reversal.

However, in *MCI* we also recognized that where there was enough evidence and discussion in an order to

enable the commission's reasoning to be readily discerned, this court has found substantial compliance with R.C. 4903.09, and held that the lack of specific findings may be simply a technical defect which would not result in the invalidation of the order. *Consumers' Counsel v. Pub. Util. Comm.* (1979), 58 Ohio St. 2d 108, 12 O.O. 3d 115, 388 N.E. 2d 1370; *Braddock Motor Freight, Inc.* v. *Pub. Util. Comm.* (1963), 174 Ohio St. 203, 22 O.O. 2d 173, 188 N.E. 2d 162.

After analyzing more recent decisions in *MCI*, we concluded that to meet the requirements of R.C. 4903.09, the commission's order must show, in sufficient detail, the facts in the record on which the order is based and the reasoning followed by the commission in reaching its conclusion. *Cleveland Elec. Illum. Co.* v. *Pub. Util. Comm.* (1984), 12 Ohio St. 3d 320, 322, 12 OBR 390, 392, 466 N.E. 2d 917, 920; *Cleveland Elec. Illum. Co.* v. *Pub. Util. Comm.* (1983), 4 Ohio St. 3d 107, 4 OBR 355, 447 N.E. 2d 746; *Harold D. Miller, Inc.* v. *Pub. Util. Comm.* (1982), 1 Ohio St. 3d 162, 1 OBR 194, 438 N.E. 2d 448.

The procedural entry herein and the *Continental* order meet this test. They show, in detail, the facts in the record and the reasoning followed. Therefore, we hold that the commission's entry and the *Continental* order satisfy the requirements of R.C. 4903.09 for a reasoned decision based on a factual record.

We do not share the appellants' concerns that to uphold the dismissal entry is tantamount to encouraging the commission to skirt its statutory duties and to "* * * effectively destroy the concept of economic regulation of motor carriers in Ohio intrastate commerce." Our holding today recognizes only that it is appropriate to rely on the *Continental* decision for purposes of the proceeding below.

Sandridge's application was filed just three months after the *Continental* decision was issued. One of the key findings from *Continental*—that "there *currently exists* within the state of Ohio an ongoing, special, state-wide need for transportation service in vehicles equipped with mechanical refrigeration [emphasis added]"—is, by its own terms, short-lived. The requirements known at the time of *Continental* and the order herein obviously could change. With this potential for change, renewed consideration will almost certainly need to be given to "other existing transportation facilities in the territory for which a certificate is sought" if the provisions of R.C. 4921.10 are to be satisfied in the future.

We find the remainder of appellants' arguments, in particular those regarding the commission's reliance on the "law of estoppel" and the failure to include "conditions" on the face of the *Continental* certificates of authority, unnecessary to address. Even if it is assumed that the commission erred in either respect, we can find no evidence of prejudice. Absent a showing of prejudice, this court will not reverse an order of the commission. *Cincinnati Bell, supra,* at 285, 12 OBR at 360, 466 N.E. 2d at 853.

Whether the applicant herein possesses sufficient equipment, experience, ability, financial stability and knowledge of the rules and regulations governing motor carrier operations and is a proper party to whom authority may be granted, is not an issue presently before us. Nor have we been called upon to determine whether the appellants have the right to intervene to present their views on this, the "fitness" aspect of Sandridge's certification proceeding. We would

observe, however, that Ohio Adm. Code 4901-5-02(C) does imply that the commission will entertain petitions to intervene based on reasons other than conflicting authority.

Accordingly, we hold that the commission did not act unreasonably or unlawfully in dismissing the protesting carriers, and we affirm the order of the commission.

*Order affirmed.*

SWEENEY, HOLMES and DOUGLAS, JJ., concur.

LOCHER, WRIGHT and H. BROWN, JJ., dissent.

LOCHER, J., dissenting. Because the Public Utilities Commission's order dismissing the appellant's protests is unreasonable and unlawful, I respectfully dissent.

It is clear that the commission has ignored the law in this action. There can be no doubt that the protesting carriers have a statutory right to appear and protest Sandridge's application. This right is implicit pursuant to R.C. 4921.09. See *D.G. & U. Truck Lines, Inc.* v. *Pub. Util. Comm.* (1953), 158 Ohio St. 564, 572, 49 O.O. 447, 481, 110 N.E. 2d 587, 592. R.C. 4921.09 provides in pertinent part:

"Upon application for a certificate when intrastate operations are proposed, the public utilities commission shall give written notice of the filing of such application to all like motor transportation companies operating between fixed termini or over a regular route, street railways, interurban railroads, and railroads operating in this state, and upon application for a certificate to operate over an irregular route when intrastate operations are proposed, the commission shall give additional written notice of the filing of such application to all motor transportation companies holding irregular route certificates at the same location proposed by the applicant.

"The commission shall, after the filing of any such application, fix a date for hearing upon it. When a date for the hearing of an application for a certificate to operate between fixed termini or over a regular route is fixed, the commission shall give the applicant, all other like motor transportation companies operating between fixed termini or over a regular route, street railways, interurban railroads, and railroads operating in this state at least ten days' notice of such hearing. When a date for the hearing of an application for a certificate to operate over an irregular route is fixed, the commission shall give the applicant, all motor transportation companies holding irregular route certificates from and to the same location proposed by the applicant, and all motor transportation companies operating over regular routes, street railways, interurban railroads, and railroads operating in this state, at least ten days' notice of such hearing."

R.C. 4921.10 also provides in relevant part:

"The commission may, after notice and hearing, when the applicant requests a certificate to serve in a territory already served by a motor transportation company holding a certificate of public convenience and necessity from the commission, grant a certificate only when the existing motor transportation company or companies serving such territory do not provide the service required or the particular kind of equipment necessary to furnish such service to the satisfaction of the commission. * * *

"Before granting any certificate the commission shall take into consideration other existing transporta-

tion facilities in the territory for which a certificate is sought. If it appears from the evidence that the service furnished by existing transportation facilities is reasonably adequate, the commission shall not grant such certificate."

While the commission has not yet granted such a certificate in the cause *sub judice,* the appellants do have a right to be heard and their views would be highly significant to any determination as to whether or not a certificate should be granted. It is difficult to conceive how an intelligent determination can be made without such views.

In its order, the commission nullifies R.C. 4921.09 and 4921.10 with an "estoppel" argument. The commission made the following findings in its order of May 27, 1987:

"8) * * * Having taken the position in *Continental* that there is an ongoing need for the unlimited availability of such state-wide service, the protestants are estopped from taking the inconsistent position in this subsequent proceeding that such a need does not exist. Stated in terms of the statute on which they rely, the protestants cannot now claim that the present service is 'reasonably adequate.' Thus, equity demands that the protestants be precluded from using the authority granted in *Continental* to protest this application.

"* * *

"9) Although the applicant based its motion, in part, on the theory that the protestants waived their right to protest subsequent applications for authority identical to that granted in *Continental,* the Commission, without rejecting such argument, believes that the law of estoppel applies to the facts presented. It is on this basis that the applicant's motion to dismiss all protests should be granted. * * *"

Today's majority overlooks this basis for the commission's dismissal and finds the estoppel issue "unnecessary to address." It is unnecessary to address because such an argument is without basis in reason. Proof of this is that the commission abandons the estoppel argument that it used as a basis for its decision, in the brief it filed before this court.

Assuming that the *Continental* order was controlling in this case, the majority also ignores the cogent argument that the applicants in *Continental* agreed only for that proceeding not to protest each other's applications for authority to transport. Finding number eight of the *Sandridge* entry of May 27, 1987 provides in part: "The applicants [in *Continental*] moved to consolidate the seventy-plus cases into one proceeding, *and agreed not to protest each others' [sic] request for the identical authority.*" (Emphasis added.) The commission fails to provide any evidence that the *Continental* order was designed to prevail over the applicants for an indefinite period of time. This raises the question as to how long the commission will use the *Continental* order in its efforts to silence protesting carriers.

In my view, the commission ignored the law in its effort to reach the result it was seeking. Unfortunately, today's decision encourages such a practice. The appellants should be permitted to protest Sandridge's application. Accordingly, I respectfully dissent.

WRIGHT and H. BROWN, JJ., concur in the foregoing dissenting opinion.