[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 1.]

CANTON STORAGE AND TRANSFER COMPANY, INC. ET AL., APPELLANTS, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

ADVANCE TRANSFER COMPANY ET AL., APPELLANTS, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

CARR'S MOVING AND STORAGE COMPANY ET AL., APPELLANTS, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as *Canton Storage & Transfer Co. v. Pub. Util. Comm.*, 1995-Ohio-282.]

*Public Utilities Commission—Motor transportation carriers—Commission abuses its discretion when it issues certificates of public convenience and necessity to applicants seeking statewide authority to carry household goods, when.*

(Nos. 93-2331, 93-2332 and 93-2449—Submitted January 25, 1995—Decided April 12, 1995.)

APPEALS from the consolidated order of the Public Utilities Commission of Ohio, Nos. 90-506-TR-ACE, 90-507-TR-ACE, 90-508-TR-ACE, 90-509-TR-ACE, 90-510-TR-ACE, 90-511-TR-ACE, 90-512-TR-ACE, 90-514-TR-ACE, 90-516-TR-ACE, 90-517-TR-ACE, 90-518-TR-ACE, 90-519-TR-ACE, 90-520-TR-ACE, 90-522-TR-ACE, 90-524-TR-ACE, 90-633-TR-ACE, 90-634-TR-ACE, 90-662-TR-ACE, 90-686-TR-ACE, 90-860-TR-ACE, 90-861-TR-ACE and 90-930-TR-ACE.

———————————

{¶ 1} These consolidated appeals involve the applications of twenty-two motor carriers for authority to transport household goods throughout the state of Ohio with no route limitations. At the time of the applications, each applicant was a member of the Ohio Household Goods Carriers' Bureau and held "radial" transportation authority, which limits the carrier to transporting household goods from and/or to specific geographical locations within the state, or authority for transportation within a county.

**{¶ 2}** Prior to the order by the Public Utilities Commission of Ohio in these cases, no carrier had been granted unlimited statewide household goods shipping authority.[1] Instead, carriers were granted either radial shipping authority (*e.g.*, from anywhere within the state to Columbus or from Columbus to anywhere in the state) or nonradial authority (between two specified points, *e.g.*, between Columbus and Mansfield or anywhere within the county). Instead of obtaining additional authority to operate in areas beyond the scope of their individual authority, carriers either entered into a leasing arrangement with another carrier or refused to take on the move for a particular customer.

**{¶ 3}** Ninety-nine motor carriers protested the applications. Each protestant possessed a certificate of public convenience and necessity to transport household goods. Each application was opposed by the protestants.

**{¶ 4}** On July 11, 1990, the commission consolidated all twenty-two applications for purposes of hearing and order. The applicants presented their individual cases over twelve days between October 1, 1991 and February 18, 1992. Each application essentially sought to further the existing relationships between the applicant and its supporting shippers so that the shippers could have their chosen carriers serve them anywhere within the state. A typical customer was a large corporation that frequently relocated its employees within Ohio and arranged and paid for the moving of the employees' household goods. The applicants sought to maintain and enhance their relationships with their existing customers and thereby reduce the stress for the customers' employees whose household goods were being moved.

**{¶ 5}** Twenty-one shipper witnesses supported the various applications. Twelve carriers supported their individual applications with testimony from one

---

1. Statewide shipping authority was, however, granted for commodities requiring mechanical refrigeration in *Allen v. Pub. Util. Comm.* (1988), 40 Ohio St.3d 184, 532 N.E.2d 1307.

shipper witness each.[2]   Two carriers presented two shipper witnesses each to support their applications.[3]   Two carriers presented three shipper witnesses each to support their applications.[4]   Six carriers presented no shipper testimony in support of their applications.[5]   All of the supporting witnesses were commercial business shippers.   No individual consumers or household shippers testified during the hearing.

{¶ 6} Dr. Edward J. Bardi, professor of marketing at the University of Toledo, specializing in transportation and logistics, also supported the applications. Bardi believed that granting the applications would benefit the transportation industry in Ohio by maintaining and enhancing the existing relationships between the shippers and their chosen carriers.  He also felt that granting the applications would enhance the efficiency of the household goods transportation industry in Ohio by eliminating the need to lease authority from other carriers.

{¶ 7} Following presentation of the applicants' cases-in-chief, fifty-eight of the ninety-nine protesting carriers moved to dismiss the consolidated applications on the basis that the applicants had failed to prove either that there was a public need for the proposed service that was not being met by existing carriers or that the existing carriers were not providing adequate service.  A memorandum opposing the motions and reply memoranda were also filed.

---

2.  Carney-McNicholas, Inc.; Demario Moving & Storage, Inc.; Edward Eyring & Sons, Inc.; Ehmke/Columbus Movers, Inc.; Ehmke Movers, Inc.; William Fridrich Moving & Storage Co.; Fullerton Transportation, Inc.; Great Northern Moving Systems, Inc.; Locker Moving & Storage, Inc.; Berea Moving & Storage Co.; Willis Day Moving & Storage Co.; Stevens Van Lines, Inc.

3. The Brown Van & Storage Company; Harvey & Sons Moving & Storage Co.

4. Planes Moving & Storage; The Reed Warehouses, Inc.

5.  Andrews Moving & Storage Co.; Dussault Moving, Inc.; The Fred Pagels Storage Company; Berman Moving & Storage, Inc.; Fisher-Gilder & Bord Motor Express, Inc.; The Cotter Moving & Storage Company.

**{¶ 8}** The commission denied the motions to dismiss on the basis that it would, during the remaining portion of the hearing, "re-examine the various issues surrounding the granting of authority for the transportation of household goods." It directed that the applicants would not be permitted to present testimony of additional shipper witnesses and directed the protestants to be ready to establish that they were ready, willing, and able to provide the requested service under their existing authority.

**{¶ 9}** The protestants presented their cases over eleven days between October 15, 1992 and January 28, 1993. Thirty-five witnesses opposed the applications. Each protesting witness believed that granting the applications would be detrimental to his business. The protestants also presented testimony that they were available and had the necessary equipment ready to take on additional moving business in their certificated areas.

**{¶ 10}** Dr. John Grabner, associate professor of marketing at the Ohio State University, specializing in transportation, logistics, and marketing management, presented testimony opposing the applications. Grabner opined that the applicants' expert had used out-of-date and non-Ohio-specific data in rendering his opinions. Applicants presented no rebuttal testimony. Briefs and reply briefs were filed by the parties.

**{¶ 11}** On September 9, 1993, the commission granted all twenty-two applications for certificates of convenience and necessity. The commission found a public need for the proposed service, a deficiency in the current service, and determined that the applicants were proper parties to receive the new authority.

**{¶ 12}** On rehearing, the commission found all of the protestants' assignments of error to be without merit. Timely appeals were then brought to the court.

**{¶ 13}** The cause is now before this court upon an appeal as of right.

———————————

*Muldoon & Ferris* and *Boyd B. Ferris*, for appellants Canton Storage & Transfer Company, Inc. et al.

*Gamble Hartshorn Alden*, *John L. Alden* and *Todd M. Goehring*, for appellants Carr's Moving & Storage Company, et al.

*Earl N. Merwin* and *Beth A. Dinsmore*, for appellants Advance Transfer Company et al.

*Betty D. Montgomery*, Attorney General, *James B. Gainer*, *Duane W. Luckey*, *William L. Wright* and *Craig S. Myers*, Assistant Attorneys General, for appellee Public Utilities Commission of Ohio.

*Thompson, Hine & Flory*, *Thomas E. Lodge* and *Christopher Jones*, for intervening appellees, Andrews Moving & Storage Company et al.

_____

**Per Curiam.**

**{¶ 14}** The appellants propound a total of twenty propositions of law. The majority of these propositions of law focus upon a single issue, whether the commission abused its discretion when it issued the certificates of public convenience and necessity. For the reasons that follow, we hold that it was an abuse of discretion to grant the twenty-two applications for statewide authority to carry household goods and reverse the order of the commission.[6]

**{¶ 15}** Appellants raise four arguments regarding the commission's order: (1) the commission improperly changed the applicants' burden of proof; (2) the commission wrongly took administrative notice of testimony from some cases and used it to support unrelated applications for a certificate of public convenience and necessity that had little or no individual support; (3) there is no evidence in the record of a public need for the proposed service; and (4) there is no evidence in the

_____

6. Given our finding of an abuse of discretion by the commission and its disposition of the consolidated cases, we need not specifically address the remaining propositions of law raised by the appellants.

record that the existing service is deficient. Appellants allege that singly and cumulatively these errors require that the commission's order be reversed.

{¶ 16} We will not reverse a commission order unless it is unlawful or unreasonable. R.C. 4903.13. We will not reweigh evidence or substitute our judgment for that of the commission on factual questions where there is sufficient probative evidence in the record to show that the commission's order is not manifestly against the weight of the evidence and is not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Indus. Energy Consumers of Ohio Power Co. v. Pub. Util. Comm.* (1994), 68 Ohio St.3d 547, 554, 629 N.E.2d 414, 420; *MCI Telecommunications Corp. v. Pub. Util. Comm.* (1988), 38 Ohio St.3d 266, 268, 527 N.E.2d 777, 780. However, we also have complete and independent power of review as to all questions of law. *Id.*; *Indus. Energy Consumers of Ohio Power Co. v. Pub. Util. Comm.* (1994), 68 Ohio St.3d 559, 563, 629 N.E.2d 423, 426.

{¶ 17} Determining whether the commission deviated from the proper standard for issuing a certificate of public convenience and necessity under R.C. 4921.10 is a question of law. Accordingly, we have complete and independent power of review as to this question. *Id.*; *MCI Telecommunications Corp.*, *supra*, 38 Ohio St.3d at 268, 527 N.E.2d at 780.

{¶ 18} The commission, as a creature of statute, may exercise only that jurisdiction conferred upon it by statute. *Columbus S. Power Co. v. Pub. Util. Comm.* (1993), 67 Ohio St.3d 535, 537, 620 N.E.2d 835, 838. The commission's authority to grant a certificate of public convenience and necessity is set forth in R.C. 4921.10:

"*The commission may*, after notice and hearing, when the applicant requests a certificate to serve in a territory already served by a motor transportation company holding a certificate of public convenience and necessity from the commission, *grant a certificate only when the existing motor transportation company or*

*companies serving such territory do not provide the service required* or the particular kind of equipment necessary to furnish such service *to the satisfaction of the commission.* * * *

"*Before granting any certificate the commission shall take into consideration other existing transportation facilities in the territory for which a certificate is sought. If it appears from the evidence that the service furnished by existing transportation facilities is reasonably adequate, the commission shall not grant such certificate.*" (Emphasis added.)

{¶ 19} In accordance with this statute, the commission acknowledges that it may grant an application for a certificate of public convenience and necessity only where there is a public need for the proposed service and the existing service is inadequate. However, it believes that "Ohio law does not mandate how an applicant's evidence must be presented, only that the Commission find that a need exists for the service proposed based upon the facts presented." Thus, the commission contends that it is free to apply evidence to support those findings as it sees fit. This is incorrect.

{¶ 20} The commission's discretion does not extend to changing an applicant's standard of proof for obtaining a certificate:

"*Irrespective of the nature of shipping contemplated by the applicant, the degree of proof required for the issuance of a certificate of public convenience and necessity*, under existing statutes of the Motor Transportation Act, as interpreted by the courts, *is the same, and must be universally applied and enforced by the Public Utilities Commission in determining whether a certificate shall issue.*" (Emphasis added.) *Mason v. Pub. Util. Comm.* (1973), 34 Ohio St. 2d 21, 63 O.O.2d 43, 295 N.E.2d 412, syllabus.

{¶ 21} Thus, the commission is bound to apply the same standard when reviewing all applications for a certificate of public convenience and necessity, including applications to carry household goods.

**{¶ 22}** Appellants contend that the commission erred by not requiring at least two shipper witnesses per applicant in order to obtain a certificate under R.C. 4921.10. We agree.

**{¶ 23}** An applicant must support its application with more than its desire to serve the public. *Doc Goodrich & Son, Inc. v. Pub. Util. Comm.* (1978), 53 Ohio St.2d 70, 7 O.O.3d 148, 372 N.E.2d 354. Moreover, we have held that since carriers can obtain contract carrier permits to service individual shippers on a statewide basis under R.C. 4923.07, a single shipper witness is not enough to support a finding of public need for a certificate under R.C. 4921.10:

"A single shipper's need for additional service does not establish public convenience and necessity for a new certificate where the shipper's need can be met under a permit for contract carriage." *Id.* at paragraph three of the syllabus; *Bob's Truck Serv., Inc. v. Pub. Util. Comm.* (1982), 2 Ohio St.3d 83, 85, 2 OBR 637, 638, 443 N.E.2d 145, 147; *F.J. Egner & Son, Inc. v. Pub. Util. Comm.* (1968), 13 Ohio St.2d 131, 132, 42 O.O.2d 340, 235 N.E.2d 131, 132.

**{¶ 24}** Therefore, more than one supporting witness is required before the commission can find a public need for a proposed new service. This standard was not met below.

**{¶ 25}** Eighteen of the twenty-two applications were directly supported either by only one shipper witness or none at all. Twelve applications were supported by only one shipper witness each. Six applications had no shipper witness support. Only four of the twenty-two applications were supported by two or more shipper witnesses each. Thus, only four of the twenty-two applications granted by the commission were adequately supported by shipper testimony.

**{¶ 26}** The commission argues that the multiple-witness standard does not apply here because carriage of household goods is less suitable to rigorous regulation than the carriage of freight. The commission also argues that the court's decisions in *F.J. Egner & Son, Inc.* and *Doc Goodrich & Son, Inc.*, *supra*, do not

stand for the proposition that "the testimony of a single shipper's needs is insufficient to support the granting of common carrier authority." Both of these assertions are incorrect.

{¶ 27} In *F.J Egner & Son, Inc.* we were faced with the commission's denial of an application to amend common carrier authority to carry commodities in a tank vehicle. The carrier and one shipper witness supported the application. The shipper had no competition in its county, and no common carrier in Ohio had authority to serve the shipper. The commission found that the need for the proposed service had not been established and denied the application. We agreed, stating:

"It is not enough that an applicant declare his intention to serve the public as a common carrier if the record is devoid of evidence that anyone other than a single supporting shipper will have need of applicant's service. That need could be fulfilled under a permit for contract carriage." 13 Ohio St.2d at 132, 42 O.O.2d at 340, 235 N.E.2d at 132.

{¶ 28} In *Doc Goodrich & Son, Inc.*, we applied the multiple-witness rule from *F.J. Egner & Son* to an application to carry household goods. 53 Ohio St.2d 70, 7 O.O.3d 148, 372 N.E.2d 354. The applicant had sought a certificate to carry household goods from and to points in Lucas County, Ohio. Six carriers protested the application. The commission denied the application. We agreed, stating:

"The only evidence of a need for services not already available from the existing carriers was the testimony of a witness for the Xerox Corporation, who said that his company needed the services of a carrier with a warehouse. But a single shipper's need for additional service does not establish public convenience and necessity in a certification proceeding where the shipper's need can be met under a permit for contract carriage." 53 Ohio St.2d at 73, 7 O.O.3d at 150, 372 N.E.2d at 356.

**{¶ 29}** Thus, a single shipper witness does not establish a public need for a certificate of public convenience and necessity to carry household goods, where that shipper's need can be satisfied under a permit for contract carriage.

**{¶ 30}** The commission downplays the benefits from contract carriage permits. Yet, Dr. Bardi, the applicants' expert, agreed that contract permit authority would eliminate most of the shippers' problems in this case and also strengthen the relationships between the shippers and their chosen carriers. Shipper witness Bruce Jackson and protestants' expert, Dr. John Grabner, also supported the contract permit approach. Shipper witness Jackson stated that B.P. Oil had sought a contract permit with its preferred carrier, but that the application had drawn strong opposition and was still pending before the commission. Grabner also suggested that many of the shippers' needs in this case could be resolved through a contract permit, instead of statewide authority to carry household goods.

**{¶ 31}** The commission cited no facts to support its finding that the shippers below could not be adequately served through contract authority. It is unclear from our review of the record how many of the shippers in this case could be served through authority for contract carriage. Dr. Bardi and Dr. Grabner both opined that this mechanism would eliminate many of the shippers' problems. Therefore, we find that the multiple-witness rule is applicable in this case.

**{¶ 32}** The commission argues that the multiple-witness rule was satisfied when it took administrative notice of the shipper testimony supporting the individual applications and used it on a unified basis to support a finding of a public need for all of the applications. This is incorrect. The commission never expressly took administrative notice of any testimony below. It simply relied on the shipper testimony as a whole to support what it apparently viewed as some type of class application for a certificate:

"*[T]he Commission notes that, unlike a traditional commercial situation, the request for authority in this case is for service to a large class of customers,*

*both residential and corporate*. In this regard, the present case is most analogous to a class action lawsuit. *As with any class action lawsuit, it is impractical to require testimony from all members of the class. Consequently, a carrier should be able to meet the need requirement by a more general reference to the needs of the particular class* (provided the need is defined with specificity) *without requirement of individual shipper testimony*.

"* * *

"Consequently, we find that *the showing of need required by the applicants in this case is different from that usually required and that the applicants' requests should not fail simply because individual residential members of the class did not testify about a specific need to move goods from point A to point B in the state on a continuous basis*. Indeed, if we were to follow such an approach as the protestants urge then, due to the unique nature of the need and the diverse class of shippers and destination points, we would have created a burden of proof which could never be met." (Emphasis added.)

{¶ 33} We find the commission's use of the testimony in this fashion improper. In *Allen v. Pub. Util. Comm.* (1988), 40 Ohio St.3d 184, 185, 532 N.E.2d 1307, 1309, we noted that there was neither an absolute right for nor prohibition against the commission's taking administrative notice of facts outside the record in a case. Each case was to be resolved on its facts. We also established factors for determining whether administrative notice was proper:

"[T]he factors we deem significant include whether the complaining party had prior knowledge of, and had an opportunity to explain and rebut, the facts administratively noticed. Moreover, prejudice must be shown before we will reverse an order of the commission." *Id.* at 186, 532 N.E.2d at 1310.

{¶ 34} Therefore, the commission may take administrative notice of facts if the complaining parties have had an opportunity to prepare and respond to the evidence, and they are not prejudiced by its introduction. *Id.*

**{¶ 35}** Administrative notice of the testimony in this case prejudiced the protestants because the applicants' burden of proof was reduced by this use of the testimony. Six carriers did not present any shipper witnesses to support their applications. But for the commission's unified-testimony approach, these applications would have been summarily rejected because of inadequate support. *Doc Goodrich & Son, Inc.*, *supra*, 53 Ohio St.2d 70, 7 O.O.3d 148, 372 N.E.2d 354; *Bob's Truck Service, Inc.*, *supra*, 2 Ohio St.3d at 85, 2 OBR at 638-639, 443 N.E.2d at 147; *F.J. Egner & Son, Inc.*, *supra*, 13 Ohio St.2d at 132, 42 O.O.2d at 340, 235 N.E.2d at 132. The burden of proving their case was effectively eliminated for these six carriers by the commission's unified-testimony approach.

**{¶ 36}** Twelve other carriers presented only one shipper witness each to support their individual applications. These applications also would have been rejected without the unified-testimony approach. Thus, the burden of proof was reduced for the carriers that supported their applications with only one witness each. In total, eighteen applications that should have been rejected for inadequate support were granted under the unified-testimony approach.

**{¶ 37}** Using the testimony in this fashion also contradicted the express intent of the shipper witnesses. Every shipper witness but one limited his or her testimony to supporting only a single carrier's application. The shippers testified that they were consciously reducing the number of carriers that they work with, and that they would provide their chosen applicant with most, if not all, of their service in the future, if its application were granted. These witnesses made it clear during cross-examination that they wanted to deal only with their chosen carriers, and no others. Thus, the shipper witnesses did not intend to support a class action type of application. Therefore, based on the overwhelming evidence of record, we find that the shipper witnesses did not intend to support the applications of other carriers, and, under these circumstances, it was unreasonable for the commission to use the testimony in that fashion.

{¶ 38} We have also held that consolidation of cases and the exchange of testimony is impermissible where it eliminates a portion of a party's burden of proof. *Motor Serv. v. Pub. Util. Comm.* (1994), 39 Ohio St.2d 5, 68 O.O.2d 3, 313 N.E.2d 803. In *Motor Service Co.*, we determined that the commission's consolidation procedure prejudiced Motor Service Company and was, therefore, subject to reversal:

"The procedure adopted by the commission, in allowing consolidation and adoption of this testimony, eliminated Transit Homes' burden of proving the inadequacy of the existing service and the ability of Transit Homes to provide it in the Wood County area, where the public witnesses resided, who testified at the October 28 hearing. The commission's procedure eliminated the necessity for Transit Homes making its own record before the commission." *Id.* at 12, 68 O.O.2d at 7, 313 N.E.2d at 808.

{¶ 39} In this case, the commission's consolidation of shipper testimony reduced the burden of proof for eighteen of the twenty-two applicants. This prejudiced the protestants by eliminating the applicants' need to make a record at the commission. This was not our intention in *Allen*. Nor is it consistent with *Motor Service Co.*, *Mason, Doc Goodrich & Son, Inc.*, or *F.J. Egner & Son, Inc.* Therefore, we find that the commission erred when it consolidated the shipper testimony below.

{¶ 40} The commission committed further error when it stated prior to the hearing that the existing service for all of the applicants would be considered *per se* deficient if any one of the twenty-two applicants established a need for the proposed service. The commission's order confirms this *per se* deficiency finding:

"With respect to the issue of deficiency, we find that the existing service is deficient by virtue of the fact that none of the protestants [is] authorized to transport household goods between all points in Ohio. * * *"

"* * *

"CONCLUSIONS OF LAW

"\* \* \*

"7) A deficiency has been demonstrated in this case by virtue of the fact that none of the protestants hold[s] statewide authority for the transportation of household goods."

{¶ 41} The commission's entry on rehearing reaches the same conclusion.

{¶ 42} The commission's reasoning is circular and presumes, without record support, that statewide authority is required to provide adequate service. The commission's statement proves only that it has not previously granted statewide authority for the transportation of household goods. The absence of statewide authority does not, itself, prove that the existing service is deficient. Thus, the commission improperly reduced the applicants' burden of proof by eliminating their need to make a record on this issue.

{¶ 43} Thus, the commission changed the standard for issuing a certificate under R.C. 4921.10 by using testimony from unrelated application cases to support the consolidated applications and by determining prior to the hearing that each applicant's existing service would be *per se* deficient if any one applicant could prove a public need. These changes in the standard to obtain a certificate under R.C. 4921.10 were error. *Mason*, *supra*, 34 Ohio St.2d 21, 63 O.O.2d 43, 295 N.E.2d 412. Accordingly, we find that appellant Advance Transfer's first, second, third, and eighth propositions of law, Carr's Moving's propositions of law three and four, and Canton Storage's first, second, fourth, and fifth propositions of law have merit.

{¶ 44} In addition to disputing the legal standard used by the commission, appellants contend that the record evidence does not establish a public need for the proposed service or that the existing service is inadequate.

{¶ 45} An applicant must prove that the general public has a definite need for the proposed service. *Bob's Truck Service, Inc.*, *supra*, 2 Ohio St.3d at 84, 2

14

OBR at 638, 443 N.E.2d at 146; *Harold D. Miller, Inc. v. Pub. Util. Comm.* (1982), 1 Ohio St.3d 162, 163, 1 OBR 194, 195, 438 N.E.2d 448, 449.  Whether a definite need has been established is a question of fact to be determined by the commission.  See R.C. 4921.10.[7]  We will not disturb the commission's finding of need if there is sufficient probative evidence in the record to support it.  *MCI Telecommunications Corp.*, *supra*, 38 Ohio St.3d at 268, 527 N.E.2d at 780; *Indus. Energy Consumers of Ohio Power Co.*, *supra*, 68 Ohio St.3d at 554, 629 N.E.2d at 420.  That evidence does not exist in this record.

{¶ 46} A public convenience is not the same as a public need:

"A 'necessity' for motor transportation service as contemplated by the motor transportation act is not synonymous with a 'convenience,' but is a definite need of the general public for a transportation service where no reasonably adequate service exists."  *Canton-East Liverpool Coach Co. v. Pub. Util. Comm.* (1930), 123 Ohio St. 127, 174 N.E. 244, paragraph two of the syllabus;  accord *Transport Supply, Inc. v. Pub. Util. Comm.* (1979), 60 Ohio St.2d 155, 157, 14 O.O.3d 391, 392, 397 N.E.2d 1352, 1354; *Mason*, *supra*, 34 Ohio St.2d at 23-25, 63 O.O.2d at 44-45, 295 N.E.2d at 414-415; *A&T Motor Freight, Inc. v. Pub. Util. Comm.* (1932), 125 Ohio St. 617, 184 N.E. 11, paragraph one of the syllabus.

{¶ 47} Proof that additional service would be more convenient does not justify issuing a certificate:

"[I]t must be conceded that every additional transportation service in every territory, where people live or where people go, may reasonably be expected to be at some time a convenience to some one, and probably to many; and the Legislature must have known that any public transportation operation, anywhere within the state, would be a convenience to some degree to the inhabitants of its territory and

---

7.  "The commission may * * * grant a certificate only when the existing motor transportation company or companies serving such territory do not provide the service required * * * to the satisfaction of the commission." (Emphasis added.)

to the persons desiring to go into or out of such territory. The Legislature, however, was not attempting to make a certificate to operate available to every one who might apply, but was attempting to regulate the number of operations, the places of operation, and the character of the operation; and so it provided that, before a certificate could issue, not only a convenience but a necessity for such operation should exist." *Canton-East Liverpool Coach Co.*, *supra*, 123 Ohio St. at 129-130, 174 N.E. at 245; see, also, *Bob's Truck Service, Inc.*, *supra*, 2 Ohio St.3d. at 85, 2 OBR at 638-639, 443 N.E.2d at 147 (need not proven where two supporting shippers described their needs in terms of general objectives rather than specific requirements, painting a picture of occasional snags in an otherwise routine shipping schedule); *R.D.S. Mowery, Inc. v. Pub. Util. Comm.* (1981), 66 Ohio St.2d 22, 24, 20 O.O.3d 14, 15, 419 N.E.2d 7, 8 (need not proven where evidence established only that the carrier's customers were pleased with its service and wanted to use it in the future); *D.G.&U. Truck Lines, Inc. v. Pub. Util. Comm.* (1953), 158 Ohio St. 564, 574-575, 49 O.O. 477, 482, 110 N.E.2d 587, 592-593 (need not proven where supporting witnesses wanted additional, competitive service, but record showed that thirty-nine of forty-five areas sought to be served had existing service from other carriers); *A&T Motor Freight, Inc.*, *supra*, 125 Ohio St. 617, 184 N.E. 11 (need not proven by desirability of new service where evidence establishes the abundance of service currently existing in the region in question); *N.Y. Cent. RR. Co. v. Pub. Util. Comm.*, 123 Ohio St. at 374-375, 175 N.E. at 597 (need not proven where all but four of the proposed service locations were already served by certificated carriers ready, willing, and able to render additional service).

{¶ 48} We find no evidence in the record of a definite need for the proposed statewide service. All twenty-one shipper witnesses based their need for the proposed service on (1) maintaining their existing relationship with their chosen household goods carrier and (2) reducing stress on their employees who are

moving. No other evidence of need appears in this record.[8] Only one shipper was refused a move by an applicant. All other shippers made their moves with or through their chosen carriers. No shipper stated that it had been unable to ship goods to any location within the state under the existing service.

{¶ 49} The carrier applications do not support a finding of need for the proposed service. The applicants state that the purpose of their applications is to maintain and enhance their relationship with their existing customers and thereby reduce the stress for the customers' employees. However, most of the applicants were willing to enter into leasing arrangements with other carriers in order to move household goods outside their individual authority. The applicants do not discuss assisting the public, being solicited by the public for statewide service, or opening new facilities in new locations in order to serve the public. The only rationale for the additional authority appearing in the record is to provide additional services to current customers. This does not establish a public need for the proposed service.

{¶ 50} The applicants' expert also failed to support a finding of public need for the proposed service. Dr. Bardi testified generally regarding the relationship between movers and the moving family. He acknowledged that the focus of the applications was to maintain and enhance the relationships between shippers and their chosen carriers. He also acknowledged that his testimony was prepared based

---

8. The shippers also used cost savings as a third basis for establishing their need. However, the applications do not seek to change the current rate structure. Additionally, since all of the applicants were members of the Ohio Household Goods Carriers' Bureau, they are required to charge the customer the Bureau tariff rate. Therefore, unless a carrier publishes its own tariff at the commission, which it may do at its discretion, there would be no cost savings to the shipper if the applications were granted. Appellants argue that the grant of authority below may drive rates down in the future. This argument has no support in the record. No carrier stated that it would file an individual tariff with the commission as a result of the commission's actions below. Accordingly, the commission's order below likely would have no effect on rates.
9. The absence of the applicants' evidence on this issue is understandable given the commission's statement that it would presume that the current service was deficient per se, if any applicant proved that there was a need for the proposed service.

SUPREME COURT OF OHIO

upon his experience in the transportation industry, not upon any specific facts in the record.

**{¶ 51}** Bardi did not claim that the current service is inadequate, only that the existing relationship between the shippers and carriers would benefit if the applications were granted. He did not conduct any analysis of the economic impact of granting the applications or perform any analysis specific to Ohio before rendering his opinion in this case. Bardi did, however, claim that statewide authority would enhance the efficiency of the household goods transportation industry by reducing or eliminating the need to lease authority from other carriers in order to move goods into or from an area in which the original carrier does not have authority. While this testimony may show it would be more convenient for commercial shippers if the applications were granted, it does not support a finding that there is a public need for the proposed service.

**{¶ 52}** Finally, the commission concluded that the public need in this case arose from the individual shippers' desire to use the carrier of their choice and thereby reduce the stress upon the shippers' employees. That is not enough. Significantly, the commission noted the applicants' failure of proof on this issue:

"*[T]here are a multitude of existing carriers out there to serve the need* [for shipping household goods]. * * * In the case of residential and small business household goods moving needs, *the need is a sporadic one and*, as Dr. Bardi's testimony points out, *is driven more by the public's interest in returning to a carrier * * * than by the need to move goods specifically from one point to another* on a continuous basis." (Emphasis added.)

**{¶ 53}** A shipper's desire to give a specific carrier more business does not constitute a public need for statewide household goods carrier service. See *Bob's Truck Service, Inc.*, *supra*, 2 Ohio St.3d at 85, 2 OBR at 639, 443 N.E.2d at 147; *R.D.S. Mowery*, *supra*, 66 Ohio St.2d at 24, 20 O.O.3d at 15, 419 N.E.2d at 8; *D.G.&U. Truck Lines, Inc.*, *supra*, 158 Ohio St. at 574-575, 49 O.O. at 482, 110

18

N.E.2d at 592-593; *A&T Motor Freight, Inc.*, *supra*, 125 Ohio St. 617, 184 N.E. 11; *Canton-East Liverpool Coach Co.*, *supra*, 123 Ohio St. at 129-130, 174 N.E. at 245. There is no need if, as here, the goods are currently deliverable within a reasonable time under the existing service. At best, the evidence of record establishes a public convenience. Thus, there is insufficient probative evidence in the record to support the commission's finding of a public need for the proposed service. Therefore, we hold that the commission's finding of need in this case is against the manifest weight of the evidence.

{¶ 54} As with the issue of public need, the question of the adequacy of the existing service is one reserved for the commission. R.C. 4921.10. If there is sufficient probative evidence in the record to support the commission's deficiency finding, that finding will not be disturbed. *MCI Telecommunications Corp.*, *supra*, 38 Ohio St.3d at 268, 527 N.E.2d at 780; *Indus. Energy Consumers of Ohio Power Co.*, *supra*, 68 Ohio St.3d at 554, 629 N.E.2d at 420. Appellants correctly argue, however, that the record evidence demonstrates that the existing service is "reasonably adequate" for all of the applicants.

{¶ 55} " 'Reasonably adequate' does not contemplate the highest character of service, either as to frequency or directness, but only contemplates a service which, when measured by the expense of the service, the volume of traffic and the needs of the public, is practicable." *Canton-East Liverpool Coach Co.*, *supra*, 123 Ohio St. 127, 174 N.E. 244, at paragraph three of the syllabus; see, also, *Transport Supply, Inc.*, *supra*, 60 Ohio St.2d at 158, 14 O.O.3d at 393, 397 N.E.2d at 1354; *A&T Motor Freight, Inc.*, *supra*, 125 Ohio St. 617, 184 N.E.2d 11, at paragraph two of the syllabus.

{¶ 56} Thus, in order for a certificate to issue, an applicant must, in addition to showing the public's need for the proposed service, prove that there is no practicable alternative available. No applicant established this fact below.

**{¶ 57}** Neither the shipper witnesses, the applicants, nor the applicants' expert addressed the deficiency issue in prefiled testimony. No shipper claimed that there were shipments that could not be delivered because there were no available carriers. With one exception, every shipper was able to ship goods to every location within the state under the current system within a reasonable time, irrespective of any limitation on its chosen carrier's authority.

**{¶ 58}** Shipper witnesses were uniformly unaware which carriers were available and/or had authority to carry household goods to and from various locations around the state. Further, the shippers acknowledged that they were periodically solicited by other carriers seeking to haul household goods on an intrastate basis.

**{¶ 59}** The protestants testified that they were available and had the necessary equipment ready to take on additional moving business in their certificated areas. Applicants' failure of proof is also evident in the commission's order and entry on rehearing. The commission does not cite a single fact supporting its conclusory statement that the current service is inadequate.

**{¶ 60}** Each applicant had the burden of proving each element of its application. None proved this aspect of its case.[9] Our review of the record reveals no support for the commission's finding that the current transportation service for household goods in Ohio is inadequate. To the contrary, the record evidence supports only one finding, that the current service was adequately serving the needs of the shipping public. Accordingly, we find that the commission's conclusion that the existing service was deficient is against the manifest weight of the evidence.

**{¶ 61}** Appellants also contend that the commission's order contravenes the legislative policy enunciated in R.C. 4921.03. R.C. 4921.03 provides in part:

---

9. The absence of the applicants' evidence on this issue is understandable given the commission's statement that it would presume that the current service was deficient *per se*, if any applicant proved that there was a need for the proposed service.

"The policy of this state is to:

"(A) Regulate transportation by common and contract carriers by motor vehicle in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers in the public interest;

"(B) Promote adequate, economical, and efficient service by such motor carriers, and reasonable charges therefor, without unjust discriminations, undue preferences or advantages, and unfair or destructive competitive practices."

{¶ 62} We have recognized that the state's policies are created to protect the public interest, not the interests of individual carriers. In that regard, any benefits and rights incidental to certificate ownership are secondary to the needs of the public:

"It is a fundamental principle that in the matter of the regulation of motor transportation carriers the purpose of motor transportation legislation is to secure to the public necessary and convenient common carrier service over the highways * * * and that * * * certificates are issued for the *benefit of the public rather than for the benefit of the recipients of the certificates*. Anticipated benefits to the applicant or *possible detriment to other certificate holders are only incidental and secondary.*" (Emphasis added.) *Modern Motor Express, Inc. v. Pub. Util. Comm.* (1950), 154 Ohio St. 271, 275, 43 O.O. 162, 164, 95 N.E.2d 764, 767-768; *Mason*, *supra*, 34 Ohio St.2d at 26, 63 O.O.2d at 46, 295 N.E.2d at 415.

{¶ 63} This possible detriment to certificate holders is balanced with the recognized policy of limited competition within the certified area. We have repeatedly stated "the established public policy of this state that no more trucks or busses be placed on the public highways than the public necessity requires." *Mohawk Motor, Inc. v. Pub. Util. Comm.* (1953), 159 Ohio St. 77, 84, 50 O.O. 63, 66, 110 N.E.2d 909, 912; see, also, *D.G.&U.*, *supra*, 158 Ohio St. at 575, 49 O.O. at 482, 110 N.E.2d at 593 (R.C. 4921.10's predecessor "'requires the commission

to limit its authorization so that no more motor trucks or buses are placed on the highways of the state than the public necessity requires.'"); *Canton-East Liverpool Coach Co.*, *supra*, 123 Ohio St. at 130, 174 N.E. at 245 ("The Legislature, however, was not attempting to make a certificate to operate available to every one who might apply, but was attempting to regulate the number of operations, the places of operation, and the character of the operation * * *."); *McClain v. Pub. Util. Comm.* (1924), 110 Ohio St.1, at 7-10, 143 N.E. 381, at 382-383. The policy's focus is protecting the public and the certified transportation routes:

"The best interests of and the most efficient services to the public do not require a greater number of motor trucks upon the highway of the state than are necessary to supply the public need for such transportation. * * * The policy announced by the existing statutes, and frequently applied in these cases, is to preserve and protect previously certified transportation routes, not primarily for their benefit, but for the benefit of the public." *N.Y. Cent. RR., Co.*, *supra*, 123 Ohio St. at 377-378, 175 N.E. at 598.

{¶ 64} Thus, although certificate holders have no vested right to limited competition in their certified territories, we have held that the state's policy is to limit competition within an area only to that which is necessary to fulfill the public's need. The commission's order obviously violates this policy if, as in this case, there is no public need for the additional services. *Id.*; *McClain*, *supra*, 110 Ohio St. at 7-10, 143 N.E. at 382-383. On this basis alone, the commission's order violates the state's transportation policy enunciated in R.C. 4921.03.

{¶ 65} Although the commission's order may be grounded in sound public policy and furthers the commission's recent attempts to foster free and open competition in Ohio, it is beyond the scope of the commission's statutory authority. The General Assembly, not the commission, must make changes in the regulatory

climate to permit increased competition. The current statutory framework does not permit the commission to effect this expansion.

{¶ 66} We addressed this issue in *Edwards Motor Transit Co. v. Pub. Util. Comm.*:

"[T]he primary purpose of R.C. 4921.10 is to insure that the public convenience and necessity [are] adequately served; whether the accomplishment of this goal restricts or expands competition is irrelevant. Indeed, it may reasonably be argued that regulation, in any form, is the antithesis of free enterprise and an anathema to the ideal of competition. While this may be an interesting and proper subject for debate, it is patently clear that this court is not the proper forum for such debate. We concur with the commission's statement that '[i]f the public interest may be better served by unrestricted competition in the bus industry, it is a determination that should be made through the legislative process.'

"We have held that '[i]t is not the policy of the motor transportation statute * * * to promote unrestricted competition between common carriers.' Likewise, '[u]nrestricted competition among common carriers * * * is not the policy of the legislation covering motor transportation companies. * * * Such policy is that the public be served by the existing carriers and that additional service be authorized only when the service being rendered is inadequate.'" (Citations and footnotes omitted.) *Edwards Motor Transit Co. v. Pub. Util. Comm.* (1982), 1 Ohio St.3d 3, 4, 1 OBR 29, 30, 437 N.E.2d 291, 293.

{¶ 67} Thus, only the General Assembly makes policy decisions based upon the concept of free competition. If the household goods transportation industry is to become freely competitive, the General Assembly must effect that change. Absent that type of change in the statutory framework, the commission is constrained, as we are, to apply the existing framework to all applications for a certificate of public convenience and necessity. Accordingly, the commission erred

23

when it attempted to bypass the General Assembly and create, by administrative fiat, a freely competitive household goods transportation industry in Ohio.

{¶ 68} Appellant Carr's Moving also believes that the commission's order violates state policy by giving the applicants an undue preference. We disagree. No record evidence establishes that issuing the requested certificates will provide any applicant an undue preference. Although there might initially have been some preference to these applicants, that preference would be short-lived. The commission made it clear that any carrier that wants statewide authority should be able to obtain it. When the commission issued the certificates in this case, it did so with the proviso that the recipients should not object to the issuing of similar authority to other carriers in the future. Thus, any qualified carrier could obtain a statewide certificate and compete on equal footing. Therefore, the commission's decision, with the sole exception of the timing of the certificates, does not appear to provide any carrier with an undue preference.

{¶ 69} Appellant Advance Transfer argues that the commission erred when it found that the leasing of equipment/authority in these cases was not an adequate substitute for statewide authority. Whether leasing arrangements are a reasonable substitute for statewide authority is a factual issue for the commission to determine. There is ample evidence in the record supporting the commission's statement that the current practice of leasing of authority is problematic. As a result, there is adequate record support for the commission's finding in this case. We will not substitute our judgment for that of the commission on this issue.

{¶ 70} Advance Transfer implies that the commission's decision effectively eliminated a carriers' right to lease equipment or otherwise engage in an oral trip lease under Ohio Adm. Code 4901:2-3-03(E)(4). This is incorrect. The commission's decision is without the global scope imparted to it by this appellant. Were the commission's intent to prohibit trip leasing as a whole, it would have said

so. The commission made no such statement. Accordingly, we do not substitute our judgment for that of the commission on this issue.

**{¶ 71}** For the reasons set forth above, we find that the commission abused its discretion when it granted the twenty-two applications for statewide authority to haul household goods. Accordingly, the commission's order is reversed and the cause is remanded.

*Order reversed*

*and cause remanded.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

WRIGHT, J., concurs in judgment only.

_____